IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES E. SHANER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:04cv638-SRW |
| | ) | (WO) |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION AND ORDER**

Charles E. Shaner brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

On September 17, 2002, plaintiff filed an application for disability insurance benefits and supplemental security income. On January 15, 2004, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on February 17, 2004, in which he found, *inter alia*, that plaintiff suffers from "severe" impairments of peripheral vascular disease manifested by occlusion of the left subclavian artery status-post multiple surgical procedures, Hodgkin's disease in remission,

chronic obstructive pulmonary disease, gastroesophageal reflux disease, and frozen left shoulder. The ALJ further concluded that plaintiff cannot perform his past relevant work as a landfill management superintendent but retains the residual functional capacity to perform other jobs that exist in significant numbers in the national economy, including work as a service station attendant, sales clerk and entertainment facility desk clerk. Thus, the ALJ found that plaintiff is not disabled within the meaning of the Social Security Act. On May 3, 2004, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis

has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioners decision, arguing that it is due to be reversed because the ALJ did not properly apply the Eleventh Circuit's pain standard in assessing plaintiff's complaints of subjective symptoms and the ALJ improperly failed to accord substantial or considerable weight to the opinion of plaintiff's treating physician.

*Plaintiff's Subjective Complaints*

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence and that he failed to articulate sufficient reasons for rejecting plaintiff's subjective complaints of pain and significant dizziness.  In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  "The standard also applies to complaints of subjective conditions other than pain."  Holt, *supra*, 921 F.2d at 1223.  If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

After considering the testimony, the ALJ may reject the claimant's subjective

3

complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. The reasons articulated by the ALJ must be "explicit, adequate, and supported by substantial evidence in the record." Preston v. Barnhart, 2006 WL 1785312, *1 (11th Cir. Jun. 29, 2006)(unpublished opinion)(citing Hale v. Bowen, 831 F.2d 1007, 1011-12 (11th Cir. 1987)). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[1] "The credibility determination does not need to cite ""'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole."'" Dyer, *supra*, 395 F.3d at 1210 (citations omitted).

Plaintiff testified that he gets "real dizzy" when he stands up and that he is, therefore, very restricted in his movement. He stated, "[if] you go to stand up, if you ain't careful,

---

[1] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

you'll fall down." (R. 325). He testified that he is dizzy about 50 percent of the time, when he is standing. He stated that he is not dizzy when he is seated, but "[i]t's when you stand up, you get real dizzy." (R. 331). Plaintiff described pain in his arm and shoulder that is "a real sharp pain." He testified that his pain is "pretty bad" – at least a seven on a scale of one to ten, two or three days a week – and that he takes Demerol for the pain. (R. 315-17).

The ALJ did not fully credit plaintiff's testimony regarding his pain and dizziness, finding that he "experiences a moderate degree of pain and for three hours every other day he experiences moderate dizziness caused by side effects from medication." (R. 22). The ALJ stated, in part:

> The claimant's testimony of disabling pain and functional restrictions [is] not entirely proportionate to the objective medical evidence. The record does contain objective signs and findings that could reasonably be expected to produce some pain, but not the degree and intensity of pain and limitations alleged. There are not any diagnostic studies demonstrating abnormalities that might cause such extraordinarily severe symptoms. Moreover, there is no evidence of an emotional component likely to produce pain of a psychogenic nature. The physical findings in the record do not establish the existence of debilitating neurological deficits, significant weight loss, significant muscle atrophy, or other observable signs usually associated with protracted pain of the intensity, frequency, and severity alleged.

(R. 21). The ALJ further relied on plaintiff's daily activities. The ALJ stated:

> Moreover, he testified that he does cook sometimes, wash clothes, put dishes in the dishwasher, and shop a little. He prepares his child for school and takes her to school. He picks his daughter up from school at 3:00 p.m. and takes her to gymnastics. He drives her home at 6:00 p.m. After supper, he helps with her homework. Obviously, he would not be able to drive his little girl safely if he was so dizzy and in such great pain that he could not concentrate[] well enough to drive. His wife must think he is capable of driving or she would not trust her daughter's life to him.

(Id.).

Plaintiff suffers from an occluded subclavian artery. (R. 262). The notes of plaintiff's treating vascular surgeon indicate that this condition can cause severe pain. See R. 141 ("This is a 48 year old man with severe pain in the left arm due to a subclavian artery occlusion."); see also R. 286, Letter from Dr. Ingalls dated 1/6/04 (Mr. Shaner has unreconstructible vascular disease occluding the blood flow to his left subclavian artery and has significant disability from it."). As noted above, in discounting plaintiff's pain testimony, the ALJ relied in large part on his conclusion that the record did not evidence significant weight loss or significant muscle atrophy. However, this conclusion is not supported by substantial evidence, as both significant weight loss and muscle atrophy are reflected in the record. Dr. Alan Babb conducted a consultative examination for the Commissioner on October 31, 2003. He recorded that the plaintiff weighed 148 pounds at the time of the examination. Dr. Babb indicated that the plaintiff was a former patient of his and that plaintiff "has lost about 50 pounds over the last five years in relation to his treatment for Hodgkin's lymphoma." Dr. Babb stated that plaintiff was "a very thin, markedly older-appearing, white male who appears at least 20 years older than his stated age. . . . . I have known Chuck for many years and he truly looks bad now. He has lost so much weight during the course of his treatment . . . ." (R. 232-35). Plaintiff, who is 6'1", weighed 163 pounds in August 2000 and testified that his weight – which fluctuates "a lot" and has been as low as 130 pounds – was 140 pounds at the time of his administrative hearing in January 2004. (R. 211, 310). Additionally, Dr. Babb's report notes plaintiff's "generalized muscle

wasting" under the heading of "Neurologic Exam" and "generalized wasting" under the heading "Extremities." (R. 234; see also *Stedman's Medical Dictionary* (26th ed.) at p. 166 (defining muscular atrophy as "wasting of muscular tissue").

Further, the ALJ's observation that plaintiff is able to drive his daughter to school and to and from gymnastics practice, while supported by substantial evidence, does not provide adequate justification for discrediting plaintiff's testimony regarding his dizziness. Plaintiff testified that his dizziness did not occur while he was seated, but only when he stood. Plaintiff's treating physician, Dr. Edwards, confirmed that plaintiff "has significant postural dizziness due to his vascular disease . . . ." (R. 287, Jan. 13, 2004 letter from Dr Edwards).[2]

Thus, the ALJ's reasons for discrediting plaintiff's testimony regarding his pain and dizziness are either inadequate or not supported by substantial evidence. In assessing the plaintiff's residual functional capacity, the ALJ determined that plaintiff suffered from a "moderate" degree of pain, discounting plaintiff's testimony of pain because of the lack of evidence of significant weight loss or muscle atrophy, a conclusion which is not supported by substantial evidence. If plaintiff's pain testimony had been credited even to the extent that he experienced a "moderately severe degree of pain lasting more than three hours and occurring two to three days a week," he could not perform either his past relevant work or other work existing in the regional or national economy, according to the vocational expert.

---

[2] Dr. Edwards further expressed the opinion that plaintiff is "disabled and unable to work." (R. 287). The ALJ correctly noted that this was an opinion on an issue reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(1).

7

(R. 351).[3]  Under these circumstances, a remand for an award of benefits is appropriate.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is due to be REVERSED and this case REMANDED for an award of benefits. A separate judgment will be entered.   Accordingly, it is

ORDERED that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty days after he receives a notice of award of benefits from the Commissioner.[4]

Done, this 20th day of July, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

[3] Additionally, the ALJ's RFC determination – and, thus, his hypothetical question to the vocational expert – included dizziness for only a few hours every other day as a side effect of Demerol.

[4] This order does not extend the time for filing a petition for authorization of fees pursuant to the Equal Access to Justice Act.

8